*Cortes-Gomez v. Barr*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 3rd day of April, two thousand nineteen.

PRESENT: JOSÉ A. CABRANES,
CHRISTOPHER F. DRONEY,
RICHARD J. SULLIVAN,
*Circuit Judges*.

_____

ANTONIO CORTES-GOMEZ,

*Petitioner*,

v.                                                                              17-3967

WILLIAM BARR, UNITED STATES ATTORNEY GENERAL,

*Respondent*.[*]

_____

FOR PETITIONER:                    Jorge Guttlein, Jorge Guttlein & Associates, P.C., New York, NY.

---

[*] The Clerk of the Court is directed to amend the caption as shown above.

FOR RESPONDENT:                    Leslie McKay, Senior Litigation Counsel, Office of Immigration Litigation (Terri J. Scadron, Assistant Director, *on the brief) for* Chad A. Readler, Acting Assistant Attorney General, Civil Division, Washington D.C.

**UPON DUE CONSIDERATION** of this petition for review, it is hereby **ORDERED, ADJUDGED, AND DECREED** that the petition is granted, and the BIA's order denying the motion to remand is **VACATED**.

Petitioner Antonio Cortes-Gomez seeks review of a November 27, 2017 decision of the Board of Immigration Appeals ("BIA") denying his motion for remand and dismissing his appeal of a June 21, 2017 decision of an Immigration Judge ("IJ"). *In re Antonio Cortes-Gomez,* No. A 208 909 864 (B.I.A. Nov. 27, 2017), *aff'g* No. A 208 909 864 (Immig. Ct. N.Y. City June 21, 2017). For the reasons explained below, we vacate the BIA's decision as to Cortes-Gomez's motion for remand and remand for further proceedings consistent with this order.

## Background

Petitioner Antonio Cortes-Gomez is a Mexican native and citizen who entered the United States in 1995. Ten years later, Cortes-Gomez was the victim of a hate crime in Brooklyn, New York, which he helped solve by cooperating with the Kings County District Attorney's Office.

On February 3, 2017, Cortes-Gomez was arrested by Immigration and Customs Enforcement on suspicion that he was unlawfully present in the United States and was served with a Notice to Appear before an Immigration Judge. Cortes-Gomez first appeared before an IJ on April 10, 2017. Although he conceded removability before the IJ, he requested a continuance to pursue a U nonimmigrant visa.[1] The IJ granted his request and continued proceedings for five weeks. At his second hearing, Cortes-Gomez again requested a continuance. He explained that obtaining records of his cooperation during the investigation of the 2005 crime proved difficult—the records were sealed because the

---

[1] A U visa is available to an alien who "has suffered substantial physical or mental abuse as a result of having been a victim of criminal activity[,] . . . possesses information concerning criminal activity . . . [and] . . . has been helpful, is being helpful, or is likely to be helpful to a Federal, State, or local law enforcement official," prosecutor, judge, or other authority prosecuting criminal activity. Victims of Trafficking and Violence Protection Act of 2000, Title V, Pub. L. No. 106-386, 114 Stat. 1464 (codified at 8 U.S.C. § 1101(a)(15)(U)(i)); *see Matter of Sanchez Sosa, et al.*, 25 I. & N. Dec. 807, 809 (BIA 2012). Congress created the program to "strengthen the ability of law enforcement agencies to detect, investigate, and prosecute cases of domestic violence, sexual assault, trafficking of aliens, and other crimes . . . while offering protection to victims of such offenses in keeping with the humanitarian interests of the United States." Victims of Trafficking and Violence Protection Act of 2000, § 1513.

perpetrator was a minor at the time of the crime and unsealing them required an order of a New York state court. The IJ again granted Cortes-Gomez a 30-day continuance but warned that he had "to move awfully quickly" because although the IJ was "sympathetic to him as a result of the hate crime . . . at some point, . . . [Cortes-Gomez] might be looking at a removal order." App'x 43.

At his third hearing before the IJ, in June 2017, Cortes-Gomez explained that his motion to unseal records related to the 2005 crime was still pending in state court, but the Kings County DA's office was assisting in the process. He explained that he expected a decision on his motion within the next week or two and requested a third continuance. The IJ denied his request, finding that Cortes-Gomez's U visa application was "speculative" and there was "no quick end in sight" to the proceeding. App'x 48. From the time Cortes-Gomez received the Notice to Appear until the IJ denied his third request for a continuance, fewer than five months had passed.

Cortes-Gomez appealed the IJ's decision to the BIA, challenging the IJ's denial of his third request for a continuance and seeking remand "to allow [him] to apply for U non-immigrant status as relief from removability." App'x 24. In support of his motion for remand, Cortes-Gomez argued that he was now *prima facie* eligible for a U visa because he had provided new evidence showing that he received U visa certification from the Kings County DA's office on July 20, 2017, and submitted his completed U visa application to the United States Citizenship and Immigration Services ("USCIS").

On November 27, 2017, the BIA denied Cortes-Gomez's appeal. The Board determined that although "[a]n alien who has filed a prima facie approvable visa petition for a U nonimmigrant visa with the USCIS will ordinarily warrant a favorable exercise of discretion for a continuance for a reasonable period of time," no continuance was warranted because Cortes-Gomez had "not established that any continuance would be for a reasonable period of time or that he is likely to be granted a U visa based on his record." App'x 2. The BIA also found that the twelve-year delay between the 2005 hate crime and Cortes-Gomez's filing of a U visa application supported its decision. Cortes-Gomez timely appealed to this Court.

**Discussion**

Cortes-Gomez raises two issues on appeal: (1) whether the BIA erred by finding the IJ did not abuse his discretion by denying Cortes-Gomez's third request for a continuance; and (2) whether the BIA erred by denying his motion for a remand in light of his new evidence.

We review the denial of motions for continuance and remand for consideration of new evidence for abuse of discretion. *See Sanusi v. Gonzales*, 445 F.3d 193, 199 (2d Cir. 2006) (continuance); *Cao v. U.S. Dep't of Justice*, 421 F.3d 149, 157 (2d Cir. 2005)

3

(remand). An IJ and the BIA abuse their discretion "in those circumstances where [their] decision provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements; that is to say, where [they] ha[ve] acted in an arbitrary or capricious manner." *Zhao v. U.S. Dep't of Justice*, 265 F.3d 83, 93 (2d Cir. 2001) (internal citations omitted). In addition, "[t]he BIA abuses its discretion if its decision rests on an error of law." *Freire v. Holder*, 647 F.3d 67, 69 (2d Cir. 2011) (internal quotation marks omitted).

## I.

We first consider the BIA's dismissal of Cortes-Gomez's appeal of the IJ's denial of his request for a third continuance. Under 8 C.F.R. § 1003.29 an "Immigration Judge may grant a motion for continuance for good cause shown." In determining whether good cause exists to continue removal proceedings pending a U visa application, IJs should consider: "(1) the DHS's response to the motion; (2) whether the underlying visa petition is prima facie approvable; and (3) the reason for the continuance and other procedural factors." *Matter of Sanchez Sosa*, 25 I. & N. Dec. 807, 812-13 (BIA 2012). Regarding the second factor, the filing of a "a prima facie approvable application with the USCIS," which includes law enforcement certification of eligibility("LEC") generally warrants "a favorable exercise of discretion for a continuance for a reasonable period of time." *Id.* at 815. A petitioner who has not received law enforcement certification "[o]rdinarily[] . . . would not be able to show good cause" for a continuance in the absence of other compelling circumstances. *Id.* at 814.

Applying this standard, we find that the BIA did not err in determining that the IJ did not abuse his discretion in denying Cortes-Gomez's third request for a continuance. At the time of his third request, Cortes-Gomez had not yet received law enforcement certification, and thus, the IJ properly found that he had not shown good cause for a continuance. *Id.*

## II.

We reach a different conclusion with respect to the BIA's denial of Cortes-Gomez's motion for remand. "A motion to remand that relies on newly available evidence is held to the substantive requirements of a motion to reopen." *Cao*, 421 F.3d at 156.[2] Thus, the BIA will not ordinarily grant a motion to remand raising new evidence "unless the movant has met the heavy burden of demonstrating a likelihood that the new evidence presented would alter the result in the case." *Id.* (internal quotation marks omitted).[3]

---

[2] The government acknowledges that this is the appropriate standard for reviewing Cortes-Gomez's motion.

[3] Other factors that counsel in favor of denying a motion to remand premised on new evidence are "(1) the movant's failure to make a prima facie cause of eligibility for asylum; (2) the movant's failure to . . . articulate material, previously unavailable evidence that would be introduced at a new hearing; or (3) a

Here, the specific form of relief that Cortes-Gomez requested before the IJ was a continuance in order to obtain a U visa. Therefore, when reviewing Cortes-Gomez's request for a remand to the IJ, the BIA was required to determine whether Cortes-Gomez's new evidence—i.e., his law enforcement certification and the completed visa application he submitted to the USCIS—demonstrated a likelihood of altering the result of the IJ's decision not to grant a continuance. *See id.*

As we have explained, an IJ's decision with respect to a continuance motion depends on several factors, including "(1) the DHS's response to the motion; (2) whether the underlying visa petition is prima facie approvable; and (3) the reason for the continuance and other procedural factors." *Matter of Sanchez Sosa*, 25 I. & N. Dec. at 812-13. When, as here, the DHS opposes the continuance, "the focus of the inquiry is the likelihood of success on the [U] visa petition." *Id.* at 813 (internal quotation marks omitted). This inquiry, in turn, "relates to the [petitioner's] prima facie eligibility for the U visa" since "there is a rebuttable presumption that an alien who has filed a prima facie approvable application with the USCIS will warrant a favorable exercise of discretion for a continuance for a reasonable period of time," *id.* at 813, 815. Nevertheless, this presumption may be rebutted based on "procedural factors, such as "the length of time the [U visa] application has been pending [and] the number of prior continuances that the [IJ] has provided." *id.* at 813, 814-15.

In this case, the BIA abused its discretion by (1) misapplying the legal principles set forth in *Sanchez Sosa* and (2) providing conclusory and unclear reasons for its decision. *See Freire*, 647 F.3d at 69; *Zhao*, 265 F.3d at 93. Specifically, although the BIA properly recognized that "[a]n alien who has filed a prima facie approvable visa petition for a U nonimmigrant visa with the USCIS will ordinarily warrant a favorable exercise of discretion for a continuance for a reasonable period of time," the BIA concluded that Cortes-Gomez had "not established [1] that any continuance would be for a reasonable period of time or [2] that he is likely to be granted a U visa based on his record." App'x 2. The BIA further explained that it found remand "inappropriate" because of the twelve-year delay between the underlying hate crime and Cortes-Gomez's filing of his U visa application. *Id.*

With respect to the BIA's first reason, aliens are not required to demonstrate that the continuance they seek will be for a reasonable period of time. Rather, *Sanchez Sosa* (the BIA decision from which this standard was pulled) stands for the modest proposition that where an alien has filed a "prima facie approvable application with the USCIS, . . . a favorable exercise of discretion for a continuance" is generally warranted and the continuance the IJ grants should be "for a reasonable period of time." *Matter of Sanchez*

---

determination that even if the applicant were eligible, asylum would be denied in the exercise of discretion." *Cao*, 421 F.3d at 156. These factors are not relevant here.

*Sosa*, 25 I. & N. Dec. at 815. *Sanchez Sosa* says nothing about requiring an alien to *show* that the continuance will be "for a reasonable period of time." *Id.* Indeed, that requirement would prove unworkable. A respondent cannot possibly *prove* she will not need more than a reasonable amount of time to receive a U visa, not least because she has no control over the administrative processes governing that question. *See Malilia v. Holder*, 632 F.3d 598, 606 (9th Cir. 2011) ("[D]elays in the USCIS approval process are no reason to deny an otherwise reasonable continuance request. As we have stated before, basing a denial on such grounds is akin to blaming a petitioner for an administrative agency's delay." (internal quotation marks omitted)).

As for the BIA's second conclusion—that Cortes-Gomez did not establish that he was "likely to be granted a U visa based on his record," App'x 2—we are left to guess as to the BIA's reasoning. Indeed, the BIA did not address whether Cortes-Gomez's new evidence established his prima facie eligibility for a U visa, even though such eligibility directly relates to the question of whether an alien is likely to be granted a U visa.[4] The only specific reason that the BIA did offer for declining to remand was that Cortes-Gomez waited twelve years to pursue a U visa; however, it is unclear whether the BIA relied on that fact to support its conclusion that Cortes-Gomez would likely not be granted a U visa, or whether the BIA relied on that fact as a procedural factor warranting the denial of a continuance regardless of whether Cortes-Gomez was likely to be granted a U visa. Regardless, on the record before us, the BIA's failure to even consider Cortes-Gomez's prima facie eligibility for a U visa or any factor other than Cortes-Gomez's delay calls into question whether the BIA properly applied the standards set forth in *Sanchez Sosa*. *See Manzur v. U.S. Dep't of Homeland Sec.*, 494 F.3d 281, 289 (2d Cir. 2007) ("This Court . . . will not hesitate to vacate and remand where the BIA or IJ analysis is insufficient to determine whether the correct legal standard was applied."); *Anderson v. McElroy*, 953 F.2d 803, 806 (2d Cir. 1992) ("[W]e cannot assume that the BIA considered factors that it failed to mention in its decision." (internal quotation marks omitted)).

Accordingly, we remand the case to the BIA to reassess whether Cortes-Gomez's new evidence would likely change the result of the IJ's decision to deny him a continuance. On remand, the BIA should consider (1) whether Cortes-Gomez has established his prima facie eligibility for a U visa, or (2) state in clear terms whether, even if Cortes-Gomez has

---

[4] The record reflects that Cortes-Gomez may in fact be eligible for a U visa. To establish prima facie eligibility for a U visa, the petitioner must first show that he suffered "substantial physical and mental abuse" as the result of a qualifying crime as defined by regulations. *Matter of Sanchez Sosa*, 25 I. & N. Dec. at 813. The petitioner must then show that he cooperated with authorities regarding the qualifying crime; he can satisfy this requirement by providing the law enforcement certification. Once the petitioner establishes that he satisfies the foregoing two factors and provides a receipt for the submission of his U visa application, he has established prima facie eligibility. In this case, Cortes-Gomez submitted to the BIA a receipt showing submission of his U visa application, the law enforcement certification, and an indictment describing the underlying crime as "caus[ing] . . injury to Antonio Cortes by means of a dangerous instrument." App'x 12-15 (Law Enforcement Certification), 17-19 (indictment), 21-22 (receipt). Thus, Cortes-Gomez may have established prima facie eligibility in accordance with the standard set forth above.

established his prima facie eligibility for a U visa, there exist procedural factors such that the new evidence would likely not change the outcome of the IJ's decision.

## Conclusion

We have considered the government's remaining arguments and find them without merit. For the reasons stated above, we **GRANT** Cortes-Gomez's petition for review, **VACATE** the BIA's determination as to his motion for remand, and **REMAND** for further proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court